**MISSION INSURANCE COMPANY,**
**Plaintiff-Appellant,**

v.

**PURITAN FASHIONS CORPORATION,**
**Defendant-Appellee.**

**No. 82–1339.**

United States Court of Appeals,
Fifth Circuit.

June 6, 1983.

---

Scott, Hulse, Marshall, Feuille, Finger & Thurmond, Howell Cobb, III, Schuyler B. Marshall, El Paso, Tex., Michael J. Izzo, Jr,, Philadelphia, Pa., for plaintiff-appellant.

Harrel L. Davis, III, El Paso, Tex., Milton Herman, Goshen, N.Y., for defendant-appellee.

Before GEE, REAVLEY and HIGGINBOTHAM, Circuit Judges.

REAVLEY, Circuit Judge:

This declaratory judgment action was filed by Mission (the insurer), seeking construction of a policy issued to Puritan. The district court declined to exercise jurisdiction and dismissed the suit. Finding no reversible error in the decision below, we affirm.

### The Facts

Mission (a California corporation) agreed to insure Puritan (a New York corporation) against certain property losses. Puritan manufactures and markets Calvin Klein jeans. Sun Apparel Co., located in El Paso, was a sewing contractor for Puritan, and its production was covered by the policy. Puritan became aware of large amounts of missing inventory in late 1980 and early 1981. An FBI investigation in both Texas and California resulted in the convictions of two California residents for transporting and receiving stolen goods. Puritan filed a proof of loss (of almost $900,000) with Mission for the theft of the jeans on December 15, 1981.

Puritan, concerned over a contractual limitations provision in the policy, requested an extension of the time allowed for suit by that provision. This request was granted on December 22, 1981. On February 5, 1982 Mission gave Puritan an extension of 30 days from the date Mission "provides a written statement of its position to Puritan." No such written statement was given however. Instead, on March 24, Mission's president orally rejected Puritan's claim, and this declaratory judgment suit was filed by Mission in federal court in Texas *that same day.* On April 16, Puritan filed suit in California state court, alleging that

Mission breached the insurance contract, asking for declaratory judgment relief and damages for bad faith, fraud and unfair settlement practices. Puritan also joined several other defendants, alleging that they converted the missing jeans.

The district court, after hearing argument, reviewing affidavit and documentary evidence, dismissed the suit. The court stated:

> Plaintiff caused Defendant to delay filing suit in California by representing that Plaintiff was considering the merits of the claim and by allowing an extension of the one year limitation period. But for these representations and implications, Defendant would have been the first to file an action presenting the same issues (plus a few more), and the forum for trial of the issues presented in this suit would have been in California.

> Therefore, in the interests of judicial economy and for the convenience of the parties and the witnesses, the Court, in an exercise of its discretion, hereby dismisses the lawsuit.

### Discussion

■ In determining whether the district court acted correctly it is important to consider the nature of a declaratory judgment. The Declaratory Judgment Act, 28 U.S.C. § 2201, confers no jurisdiction but is a procedural device designed to provide a new remedy to the federal court arsenal. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 239–240, 57 S.Ct. 461, 463–464, 81 L.Ed. 617 (1937). The district court, however, is not required to provide declaratory judgment relief, and it is a matter for the district court's sound discretion whether to decide a declaratory judgment action. *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); *Hollis v. Itawamba County Loans,* 657 F.2d 746, 750 (5th Cir.1981). As was stated in *Dresser Industries, Inc. v. Ins. Co. of North America,* 358 F.Supp. 327, 330 (N.D.Tex.), aff'd, 475 F.2d 1402 (5th Cir.1973), the Declaratory Judgment Act "gives the court a choice, not a command." [1]

■ Of course, in exercising its discretion, the "district courts may not decline on the basis of whim or personal disinclination." *Hollis,* 657 F.2d at 750. The district court may, however, take into account a wide variety of factors. Our review of the district court's action is limited to whether it abused its discretion. *Amerada Petroleum Corp. v. Marshall,* 381 F.2d 661 (5th Cir.1967), cert. denied, 389 U.S. 1039, 88 S.Ct. 777, 19 L.Ed.2d 829 (1968); *see Employers' Liability Assur. Corp. v. Mitchell,* 211 F.2d 441 (5th Cir.), cert. denied, 347 U.S. 1014, 74 S.Ct. 869, 98 L.Ed. 1137 (1954).[2]

1. Mission asserts that *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) controls this case. *Cone* dealt with the propriety of a federal district judge staying a case because of parallel state court proceedings. The Court reaffirmed its earlier holding that in the absence of constitutional questions or issues of federal-state relations, a district court should not dismiss because of parallel state court litigation absent "exceptional" circumstances. *Cone* however, is not a declaratory judgment case. As the text indicates, the purely remedial and equitable nature of declaratory judgments vests the court with discretion, and sets declaratory judgments outside the scope of *Cone.*

2. Other circuits have held that in reviewing a district court's dismissal of a declaratory judgment suit, the appellate court need not defer to the district court, but may exercise its own unfettered discretion. *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1217 (7th Cir.1980); *Hanes Corp. v. Millard,* 531 F.2d 585 (D.C.Cir.1976). Even were we not bound by our precedent, we think that the abuse of discretion standard comports more closely with the institutional role of an appellate court, which generally only reviews questions of law unfettered by the district court's interpretation. In addition, we can conceive of no reason why the standard of review for discretionary dismissals under the Declaratory Judgment Act and dismissals under *forum non conveniens* should vary. Many of the same considerations apply, *i.e.* convenience of parties and witnesses and judicial efficiency. The standard of review for a *forum non conveniens* dismissal is abuse of discretion. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). The same standard should apply in declaratory judgment cases.

The district court in dismissing considered the pendency of the parallel California litigation and the inequity of permitting Mission to gain precedence in time and forum by its conduct. The district court properly took this factor into account in dismissing the suit.

In *Amerada Petroleum Corp. v. Marshall,* the defendant had sued other parties in a district in which the plaintiff was not amenable to service of process. The defendant wrote a letter to the plaintiff stating that if the plaintiff did not submit voluntarily to jurisdiction, defendant would commence another suit in a district having jurisdiction. The plaintiff then filed a declaratory judgment action. We held:

> There is sufficient evidence to support the judge's finding that the instant action was filed by Amerada as the immediate result of the letter inviting it to appear in the District of Columbia.... That Amerada's petition for declaratory judgment apparently was in anticipation of the New York suit is an equitable consideration which the district court was entitled to take into account.

381 F.2d at 663.[3]

There is sufficient evidence here to support the district court's conclusion that Mission's action was in anticipation of Puritan's California suit. The documents show that Mission represented that in December, 1981, it was still investigating Puritan's claim. Correspondence further demonstrates that on December 22, 1981, the parties agreed that Puritan had "been granted an indefinite extension of the suit limitation period ... until such time as the company [Mission] provides *a written statement* of its

position." On February 5, only one week before the contractual limitations period would have expired, Mission agreed to modify the agreement to provide that Puritan would have "30 days to commence suit from the time of receipt of Mission's written position statement." Instead, soon thereafter Mission orally rejected Puritan's claim and commenced suit on the same day. We think these facts alone would be enough to support a finding of anticipatory filing. Yet the district court also had before it affidavit testimony that Puritan had prepared New York pleadings and planned to file them on two occasions. While Mission disputes that Puritan ever informed it of this fact (something the district court apparently did not credit), there can really be no dispute that Mission expected Puritan to file suit if its claim was denied, and this suit was in anticipation of that expected action. The district court therefore acted within its discretion in considering the anticipatory nature of this suit.

The district court also dismissed "in the interests of judicial economy and for the convenience of the parties and the witnesses." The convenience of parties and witnesses has traditionally been considered in determining whether to hear a declaratory judgment action. *Amerada,* 381 F.2d at 663–64; *E.F. Hutton & Co. v. Cook,* 292 F.Supp. 409, 410 (S.D.Tex.1968). The classic formulation of these considerations, although in a *forum non conveniens* and not a declaratory judgment context, is contained in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947):

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important con-

---

**3.** Anticipatory suits are disfavored because they are an aspect of forum-shopping. As was stated in *American Automobile Ins. Co. v. Freundt,* 103 F.2d 613, 617 (7th Cir.1939):

> The wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum.

There are indications that forum-shopping was an element in this case. Mission states that the burden of proof in regard to the loss may differ in California and Texas, an important fact in this case since even proving that the thefts

occurred may require resort to complicated accounting analyses. Puritan also joined unfair settlement practices claims in its California action, claims that may not be cognizable under Texas law. A California court, applying its "impairment of interest" choice of law analysis, *Bernhard v. Harrah's Club,* 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719 (1976), might well decide that its interest in regulating the settlement practices of California insurance companies mandate that its law apply to these claims.

siderations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Applying this test, we cannot say that the district court abused its discretion in deciding that the California suit is a more efficient vehicle for litigating this dispute. While as Mission points out there are substantial contacts with Texas, there are also substantial contacts with California. The informant who informed Puritan of the theft, the vast majority of the investigating FBI agents, and the persons who received and stole the jeans are all located in California. The testimony of these witnesses is crucial since Mission disputes that a theft occurred. While it is true that Sun Apparel and its employees are in Texas, Puritan submitted affidavits from Sun Apparel's President, Chief of Security (a former FBI agent involved in the investigation), and Puritan's El Paso manager that they were willing to travel to California to testify. Puritan also showed that the records maintained in El Paso were incomplete, and records would have to be shipped from Puritan's home office in New York. Puritan asserts that there is no greater inconvenience in shipping these records to either Texas or California. Given all these facts, we cannot say that the district court abused its discretion in choosing California over Texas.

We also note that Mission does not dispute the fact that the California suit will completely settle the disputed issues regarding coverage contained in this declaratory judgment suit. The existence of an adequate alternative remedy is a factor properly considered in the exercise of the district court's discretion. 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: § 2758 (2d ed. 1983). Mission attempts to argue that because Sun Apparel is not subject to California's jurisdiction,

that action will not afford Mission complete relief. This fact is irrelevant, however, because Mission has never attempted to join Sun Apparel in its declaratory judgment suit. We also note that the same thing would happen to Puritan if suit were to proceed in El Paso. Puritan joined several California parties in a cause of action for conversion who probably are not subject to jurisdiction in Texas. The district court's choice of California as the better forum site was an eminently reasonable exercise of its discretion.

AFFIRMED.